In the Matter of the Application of LORIMIER, GREENBAUM COMPANY, INC., Petitioner, for a Certiorari Order against JOHN F. GILCHRIST and Others, Tax Commissioners, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, May 6, 1925.

**Taxation — corporation franchise tax based on net income under Tax Law, art. 9-A — certiorari to review action of State Tax Commission in refusing to revise and resettle tax — corporation report showed $187,085.60 as salaries for its four general officers — Commission deducted $62,000 from salaries of officers on ground that said amount was not ordinary and usual expense — Commission is not required to make original assessment on corporation report alone — assessment presumptively correct — burden is on petitioner to show error on application for revision — Appellate Division will not consider reports by other corporations which were not put in evidence.**

The State Tax Commission is not bound to assess a corporation franchise tax based on net income, under article 9-A of the Tax Law, upon the basis of the corporation report alone, but is free to fix from the return and any other information the true and correct amount of the net income.

The act of the Commission in deducting $62,000 from $187,085.60, which the petitioner reported as having paid to its four general officers as salaries, is presumptively correct.

Upon an application by the petitioner to the Commission for a revision and resettlement of the tax assessed, on the ground that the $62,000 should not have been deducted, the Commission is not under a duty to justify its original assessment, but the burden is upon the petitioner to prove the alleged error in the original assessment and the exact amount thereof. The proofs given in this case on behalf of the petitioner do not discharge that burden, but on the contrary tend to show that the Commission applied a correct principle in making the original assessment, and that the deduction of $62,000 from the amount ·charged by the petitioner to salaries, was properly made, on the ground that said sum constituted a diversion of profits under the guise of salaries to officers who were the controlling stockholders of the petitioner.

The Appellate Division will not consider reports by other corporations, which reports were not included in the return, although the Commission offered to make them available upon order by the Appellate Division, for to do so would be unfair to petitioner, and furthermore the petitioner, having failed to sustain the burden of proving the alleged error, it is immaterial what further information came to the knowledge of the Commission from an examination of those reports after the hearing.

CERTIORARI ORDER granted out of the Supreme Court at the Albany Special Term on the 13th day of September, 1924, and entered in the office of the clerk of the county of Albany, directed to John F. Gilchrist and others, constituting the State Tax Commission, commanding them to certify and return to said clerk's office all and singular their proceedings had in assessing a franchise tax against the petitioner under article 9-A of the Tax Law, for the year beginning November 1, 1922.

*Powell & Silver* [*Henry M. Powell* and *Reginald F. Isaacs* of counsel], for the petitioner.

*Albert Ottinger,* Attorney-General [*Wendell P. Brown* and *Claude T. Dawes,* Deputy Attorneys-General, of counsel], for the respondents.

HINMAN, J.:

The petitioner complains of the deduction by the Commission of the sum of $62,000 from the $187,085.60 reported by the petitioner as the sum paid for salaries to its four general officers. Upon the filing of the petitioner's report, the Commission determined therefrom and presumably from such other information and data as it had in its possession that these salaries, to the extent of $62,000, did not constitute a reasonable allowance therefor as an ordinary and necessary expense incurred in carrying on the business, but a ˙diversion of profits under the guise of salaries and that, as such, the amount deducted was taxable as a part of the petitioner's net income under article 9-A of the Tax Law. A hearing was had upon the petitioner's application for a revision and resettlement

of the tax. Having heard the proofs offered on behalf of the petitioner, the Commission determined that the original assessment should be affirmed. This certiorari is to review the determination so made.

Section 214 of the Tax Law (added by Laws of 1917, chap. 726, as amd. by Laws of 1920, chap. 640; Laws of 1921, chap. 705, and Laws of 1922, chap. 507) makes the return to the Federal government subject " to any correction thereof for fraud, evasion or error, as ascertained by the State Tax Commission." In *People ex rel. Jaeckel & Sons, Inc., v. Gilchrist* (209 App. Div. 120, 122) we held that the Commission " has a right to inquire into the action of a board of directors to determine whether an officer's salary is in part a diversion of profits and as such is subject to taxation." The petitioner complains that the tax was not originally computed on the basis of facts appearing in the report filed by the petitioner; that there were no figures or other information in the report from which the Commission could have ascertained that there was " fraud, evasion or error " in relation to salaries; and that the original assessment of the tax was thus purely arbitrary and capricious without evidence to support it. The underlying defect in the petitioner's contention is that it conceives it to have been the duty of the Commission to have assessed the tax originally upon the basis of the petitioner's report alone. " The Commission is free to fix, from the return and any other information, the true and correct amount of the net income." (*People ex rel. Barcalo Mfg. Co. v. Knapp*, 227 N. Y. 64, 71.) " Whether the members of the Commission had sources of information, or pursued inquiries, outside of the report, the record does not show. They are presumed to have been diligent in the fulfillment of their duty, and the assessment which they laid is at least presumptively correct." (*People ex rel. Kohlman & Co. v. Law*, 239 N. Y. 346, 348.)

The petitioner's second contention follows logically but is weakened by the error of its first contention. It is argued that the hearing granted on the petitioner's application for a resettlement of the tax did not disclose any competent proof justifying the " previous arbitrary increase in the tax." The petitioner's theory is that the tax was arbitrary in its inception and that unless the Commission can now point to the record and show therein competent proof to sustain its finding of " fraud, evasion or error," the tax was illegal. This theory presupposes it to be the duty of the Commission, upon a hearing granted upon application for revision, to proceed to ascertain the facts essential to sustain its original assessment. . The Legislature did not contemplate that at such hearing the burden of proof should be placed upon the Commission but

rather upon the petitioner. It did not become the duty of the Commission, upon a proceeding before it to revise and resettle the tax, " to proceed to an assessment *de novo*, and prosecute of its own motion the inquiries essential to an ascertainment of the reduction to be made. * * * In the absence of evidence fixing with reasonable certainty the quantum of the error, the Board should not be required to roam about in search for information impeaching its own action. The assessment stands as ordered till the taxpayer has shown to what extent it is excessive." (*People ex rel. Kohlman & Co.* v. *Law, supra,* 351.) The burden was upon the petitioner to prove error and its exact amount.

We think that the proofs given in behalf of the petitioner upon the hearing failed to discharge the burden resting upon it of showing error in the original assessment and its exact amount. The proofs, rather, are persuasive that the Commission applied a correct principle and that there was, to some extent at least, a diversion of profits under the guise of salaries· to officers who were the controlling stockholders of the petitioner. If error was committed it was because the petitioner misconceived the principles that should govern and furnished to the Commission incomplete knowledge of the facts. In the year for which the tax was assessed, the four general officers of the corporation owned about three-fourths of the issued capital stock which amounted to $264,000. This was much more than a controlling interest. A large share of the balance of the stock was held by employees of the petitioner. Its average indebtedness for the year was $150,000. Its net worth at the end of the year was $233,727.24. Its gross sales for the year amounted to $1,237,000. The cost of its goods for that period was $797,000. This with other expenses, exclusive of salaries of officers, produced a net income of $214,859.49. Out of this amount the petitioner distributed to its officers what it called " salaries " to the amount of $187,085.60, leaving a reported net income of only $27,759.89. The so-called salaries thus allowed were as follows: To the president, $66,659.23; to the treasurer, $66,659.23; to the secretary, $33,540.14; to the vice-president, $20,227. The proofs show in a general way that the practice of the petitioner was to allow commissions on sales under some system of guaranties and then at the end of the year to vote an extra sum as compensation for the performance of official duties in the management of the business. How much was allowed to each officer for commissions and how much " extra compensation " was voted for each at the end of the year was not shown. Although the salaries were said to be based in part upon commissions on sales, it is a strange coincidence that the president received a salary identical with that of the

treasurer, even to the odd cents, which warrants the suspicion of an adjustment of profits to evade taxation, even though these two officers did not own identical amounts of stock. Such inequalities could be readily adjusted by these four officers who were the controlling stockholders. Moreover, the proofs did not show the services performed by all of these officers and little about the services of any of them. While the company was shown to have declared dividends during the last five years averaging about fifteen per cent annually, these dividends were almost exclusively stock dividends, the only one denominated as a cash dividend being one for three per cent, equalling $2,550, paid in 1918, whereas the other dividends aggregated $111,900. Of the latter sum, one dividend in 1917 of $10,500 is not so described as to permit us to say that it was a cash dividend.

Upon the hearing the petitioner furnished the names of four corporations engaged in business of the same or similar nature as that in which it was engaged and the hearing Commissioner stated that he would examine the reports of those other companies on file with the Commission. The petitioner did not ask to be heard further with reference to such evidence. It made no application to the court for an order, under section 219-i of the Tax Law, authorizing the Commission to permit the petitioner to examine such reports for the purpose of protecting its rights and in order to allow them to be incorporated in some form in the return herein for the examination of this court. The policy of the law is to prevent disclosures to rival concerns of the business particulars set forth in these tax reports, " except in accordance with proper judicial order or as otherwise provided by law." (Tax Law, § 219-i.)*
We do not decide whether or not such an order should be granted in a situation of this kind. The reports in question are not included in the return herein and this court has refused to avail itself of the offer of the Commission, made upon the argument, to produce them upon the order of this court. To do so· at this time would be unfair to the petitioner if they were to have any weight in the making of our decision, and it is unnecessary to consider them upon this review. The burden having rested upon the petitioner to prove error and its exact amount in the original assessment and it having failed in the discharge of that burden, it becomes immaterial what further information came to the knowledge of the Commission from an examination of these reports after the hearing. We have decided the case upon the record before us and the final determination of the Commission was an affirmance

---

*Added by Laws of 1917, chap. 726, as amd. by Laws of 1921, chap. 443.— [REP.

47

of its original assessment required by inadequacy of presentation of its case by the petitioner at the hearing. " If upon this record the Commission was unable, for lack of data essential to an intelligent revision, to resettle the account for taxes, it did not err in confirming the account." (*People ex rel. Kohlman & Co.* v. *Law, supra,* 351.)

The determination of the State Tax Commission should be confirmed, with fifty dollars costs and disbursements.

Determination unanimously confirmed, with fifty dollars costs and disbursements.